UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                    |                           |
|------------------------------------|---------------------------|
| UNITED STATES OF AMERICA,          | CRIMINAL ACTION          |
|     Plaintiff, | NO. 10-10293-WGY         |
| v.                                 |                           |
| WLODZIMIERZ MISZCZUK,              |                           |
|     Defendant  |                           |

<u>MEMORANDUM AND ORDER</u>

YOUNG, D.J.                                                                              March 6, 2012

## I. INTRODUCTION

The defendant Wlodzimierz Miszczuk ("Miszczuk") is charged with five counts of violating 8 U.S.C. § 1253(a)(1)(B), the criminal offense of willful failure or refusal to make a timely application in good faith for travel documents necessary to his departure. The offense carries a punishment of fines or imprisonment of up to ten years. 8 U.S.C. § 1253(a)(1). To be liable for this unusual criminal offense, a non-citizen must be subject to a "final order of removal" by an immigration officer. <u>Id.</u> In cases where the order of removal did not receive judicial review, Congress appropriately provided that a defendant charged with violating section 1253(a)(1) may file a motion to dismiss in the federal district court before trial, so that a federal judge may review the validity of the order of removal. <u>Id.</u>

Here, Miszczuk challenges both the validity of his removal

order, and also claims that the government's attempts to make him fill out an application for a Polish passport violated his First Amendment rights. Mem. Supp. Mot. Dismiss ("Def.'s Mem.") 1, ECF No. 14.

**A. Jurisdiction**

This case is a criminal case and federal district courts have original jurisdiction. 18 U.S.C. § 3231. The Court also has jurisdiction to review the immigration removal order that is a prerequisite to the crime. For individuals charged with violating 8 U.S.C. § 1253(a), Congress provided for a collateral challenge to the validity of an underlying removal order by motion:

> If the validity of an order of removal has not been judicially decided, a defendant in a criminal proceeding charged with violating section 1253(a) of this title may challenge the validity of the order in the criminal proceeding only by filing a separate motion before trial. The district court, without a jury, shall decide the motion before trial.

8 U.S.C. § 1252(b)(7)(A). Although Miszczuk's removal order was approved by the Board of Immigration Appeals, he did not appeal the order to the First Circuit, and thus the validity has not been judicially decided. Def.'s Mem. 7. The government does not challenge this Court's jurisdiction to review the validity of the administrative removal order.

**B. Facts**

Wlodzimierz ("Walter") Miszczuk is a citizen of Poland and currently is seventy-four years old. See Arrest Warrant, ECF No. 2. Miszczuk, accompanied by his daughter, entered the United

2

States in 1982 as a refugee from Communist Poland. Def.'s Mem. 1. In or about 1983, he became a lawful permanent resident of the United States. Id. He resided in Rhode Island, and worked as a mechanic. Id. Miszczuk's native language is Polish, and although he has some knowledge of English, he required an interpreter in his hearing before this Court. According to Miszczuk, his son, daughter, and five grandchildren are U.S. citizens. Admin R. 152.

### 1. Criminal History

Over eighteen years ago, Miszczuk entered an Alford plea to second degree sexual assault in Rhode Island state court and received a deferred sentence. Def.'s Mem., Ex. B, R.I. Request to Enter Plea of Nolo Contendere or Guilty, ECF No. 14-2; see Admin. R. 133, Indictment, ECF 17-3 (charging Miszczuk with violations of Rhode Island General Laws § 11-37-4 and § 11-37-5). Under the Rhode Island statute governing deferred sentences, a person convicted is exonerated five years after the conviction if he has complied with the written terms of the deferral.[1] R.I. Gen. Laws § 12-19-19(c).

In 2005, Miszczuk entered a nolo contendere plea to a state misdemeanor charge of domestic vandalism. Def.'s Mem., Ex. C, Charge Information, ECF No. 14-3 (charging Miszczuk with

---

[1] Interestingly, the First Circuit has held that deferred sentences resulting in automatic exoneration nevertheless count as convictions for immigration purposes. See Herrera-Inirio v. INS, 208 F.3d 299, 304-06 (1st Cir. 2000).

3

violating Rhode Island General Laws § 11-44-1). Miszczuk was sentenced to a suspended sentence of one year, and one year probation. Id. The criminal complaint states that Miszczuk "did commit domestic malicious damage by wilfully and maliciously injure [sic] or destroy property of his girl friend, Jan Malone . . . to wit: glass cup, cordless phone." Admin R. 113. The court also instituted a No Contact Order with respect to Jan Malone ("Malone"). Id. In 2007, Miszczuk admitted to a violation (presumably of the No Contact Order although the court records are unclear) and was sentenced to ninety days in jail. Id. at 117.

Miszczuk disputes the facts related to both of his convictions. In one letter to the immigration officer, he claimed that Malone falsified the domestic vandalism criminal complaint because she owed him $20,000. Id. at 143 ("When I called her to pay me the money she responded by calling the police on me."). Miszczuk offered other explanations in several immigration hearings as to why the charges were unfounded.[2] E.g., id. at 73-77, 93-94.

---

[2] Although Miszczuk was instructed at the beginning of his removal proceeding that he could examine the government's evidence and present his own evidence, the immigration officer made his finding of removal immediately after reviewing the conviction record and did not ask Miszczuk if he had any evidence to counter the government's allegations. See Tr. Hr'g, July 10, 2007, Admin R. 92, 95-96.

## 2. Immigration Proceedings

On March 9, 2007, immigration authorities filed a warrant for the arrest of Miszczuk for violating immigration laws.³ Id. at 162. Miszczuk was served with a Notice to Appear ("NTA") a few days later and given oral notice in English of the hearing and the consequences of failure to appear. Id. at 159. The Notice to Appear alleged that Miszczuk was removable for violating two sections of the Immigration and Nationality Act: section 237(a)(2)(E)(ii), regarding aliens who violate protection orders, and section 237(a)(2)(A)(iii), regarding conviction of an aggravated felony. See Immigration and Nationality Act of 1952, Pub. L. 84-414, § 237, 66 Stat. 163 (codified as amended at 8 U.S.C. § 1227). Miszczuk was detained by immigration authorities at the Suffolk County House of Correction in Boston. Admin. R. 161. On May 31, 2007, the government amended the Notice to Appear to also allege that Miszczuk violated 8 U.S.C. § 1227(a)(2)(A)(ii), for having been convicted for two or more crimes of moral turpitude after admission to the United States, and section 1227(a)(2)(E)(i) for a crime of domestic violence. Admin. R. 156.

Miszczuk then had a number of hearings before an immigration officer while he sought representation. See id. at 22-102. Although Miszczuk told the immigration officer several times that

---

³ It appears that Miszczuk went directly from Rhode Island state custody to immigration detention.

he would be able to retain an attorney, he never did. E.g., id. at 71. On July 10, 2007, after rescheduling several hearings to allow Miszczuk to secure counsel, the officer held a hearing on removal and found Miszczuk removable. Def.'s Mem., Ex. G, Tr. of July 10, 2011 H'rg 37-38, ECF No. 14-7.

Miszczuk appealed, and the Board of Immigration Appeals remanded the decision because the immigration officer did not prepare a separate oral or written decision explaining why Miszczuk was removable. Admin R. 40. On remand, the immigration officer dictated a terse two-page oral decision where "[b]ased upon [Miszczuk's] admissions as well as a review of all of the records of the state court proceedings," he found "by clear, convincing and unequivocal evidence [that Miszczuk] is subject to removal from the United States." Id. at 19. The immigration officer also found that Miszczuk "appears to have no relief from removal available to him."[4] Id. at 20. The oral decision did not state any specific grounds for removal, i.e., because he was an aggravated felon. Id. at 19-20.

Miszczuk again appealed, and on February 12, 2008, the Board of Immigration Appeals dismissed the appeal, characterizing the

---

[4] Federal law provides for "relief from removal" for some long term non-citizens with criminal records that could otherwise lead to removal. See, e.g., 8 U.S.C. § 1182(c); INS v. St. Cyr, 533 U.S. 289 (2001) (confirming that persons who entered plea agreements prior to April 1997 may still apply for relief under section 1182(c) even if their convictions are retroactively made aggravated felonies and not subject to relief under current law).

appealed decision as finding that he was "subject to removal as an aggravated felon." Id. at 6. Miszczuk did not appeal to the First Circuit, allegedly because he was pro se and did not realize he could appeal. Def.'s Mem. 7.

### 3. Failure to Timely Apply for Travel Documents

After the immigration officer's order of removal, Immigration and Customs Enforcement agents began to process Miszczuk's removal. On March 9, 2007, Miszczuk was given an instruction sheet that included a paragraph explaining that he would be required to apply for a travel document from his home country's embassy. Opp'n Mot. Dismiss, Ex. B, Instruction Sheet to Detainee Regarding Requirement to Assist in Removal ("Removal Instructions"), ECF No. 17-5. The government alleges that in order for Miszczuk to be admitted to Poland, he needs a Polish travel document. Opp'n Mot. Dismiss 12. Miszczuk apparently was told that he was required to complete a Polish passport application. Id. According to the government, the Detention and Removal Office has, over the past three years, repeatedly requested that Miszczuk complete the Passport Application. Id.

On September 15, 2011, a grand jury returned a five-count indictment against Miszczuk for "Willful Failure to Make Timely Application for Travel Documents pursuant to a Removal Order" under 8 U.S.C. § 1253(a)(1)(B). Indictment, ECF No. 1. Each count stemmed from a specific incident where Miszczuk allegedly refused to execute the passport application: May 5, 2008, April

7

22, 2009, November 4, 2009, June 2, 2010, and July 26, 2010. Opp'n Mot. Dismiss 13. The government claims that in each incident, Miszczuk was served with a Form I-229 "Instruction Sheet to Detainee Regarding Requirement to Assist with Removal," Removal Instructions, ECF No. 17-5, and a Form I-229a, "Warning for Failure to Depart," Opp'n Mot. Dismiss, Ex. D., ECF No. 17-6. On May 1, 2009, he was served with a "Notice of Failure to Comply" explaining that his detention could be extended if he did not assist with procuring travel documents. Opp'n Mot. Dismiss, Ex. E, Notice of Failure to Comply, ECF No. 17-8.

C. **Procedural History**

Miszczuk was indicted on September 15, 2010, while in Immigration and Customs Enforcement Custody, and arrested on September 16, 2010. Indictment, ECF No. 1; Arrest Warrant, ECF No. 4. This Court referred the case to Magistrate Judge Bowler for arraignment. The government moved to detain Miszczuk, and he agreed to voluntary detention without prejudice on September 16, 2010. Magistrate Judge Bowler appointed a federal public defender to represent Miszczuk. ECF No. 3. In November 2010, this Court agreed to an excludable delay in the interests of justice at the request of defense counsel, who cited the complexity of the case. See Scheduling Order, ECF No. 7. In April 2011, Miszczuk sent the Court a letter noting that he had been in detention for five years. ECF No. 9.

In July 2011, the defense again asked for extensions

excluding delay from July 2011 until January 2012. The Court granted the excludable delay in the interests of justice. Scheduling Order, ECF No. 12.

Miszczuk filed a motion to dismiss on November 17, 2011. Mot. Dismiss, ECF No. 13. Shortly thereafter, the government filed a motion for extension of time in order to procure and review the Executive Office of Immigration Review record of proceedings. Mot. Enlarge Time File Opp'n Mot. Dismiss, ECF No. 15. Both sides agreed to an extension, and this Court then moved the trial date to March 5, 2012. Electronic Order, Dec. 1, 2012. The Court conducted a hearing on Miszczuk's motion to dismiss on February 9, 2012, and again postponed the trial with the parties' consent.

## II. ANALYSIS

The government alleges that Miszczuk is removable for three separate reasons. First, they allege that Miszczuk was convicted of an aggravated felony (either of his convictions). Second, they state that Miszczuk was convicted of a crime of domestic violence (the conviction for vandalism). Third, they allege that Miszczuk was convicted of two or more crimes involving moral turpitude (both convictions). If any of these grounds for removal are correct, the final order of removal is valid.

### A. Legal Standard

Although it confers jurisdiction, 8 U.S.C. § 1252(b)(7)(A) does not provide a standard of review for a district court

reviewing the validity of a removal order. See 8 U.S.C. § 1252(b)(7)(A); United States v. Ayeni, 66 F. Supp. 2d 617, 621 (M.D. Pa. 1999) (noting that the statute requiring district courts to review the validity of a removal order "does not outline the standards by which the [removal] order should be assessed").

The courts of appeals use an extremely deferential standard when reviewing an administrative record in civil immigration appeals. See 8 U.S.C. § 1252(b)(4)(A)-(D). Here, the defendant is subject to ten years incarceration plus fines for each violation of 8 U.S.C. § 1253(a), so it would be troubling if court imported a similarly deferential standard into a criminal proceeding that invariably requires the government to "prove beyond a reasonable doubt every element of a charged offense." See Victor v. Nebraska, 511 U.S. 1, 5 (1994). In effect, a less exacting review by courts might unconstitutionally permit federal criminal convictions for immigrants who were not subject to a valid order of removal but lost on appeal because immigration officers made findings of fact that were not clearly erroneous.[5]

---

[5] Any constitutional concerns are exacerbated by the fact that at least one of Miszczuk's convictions (second degree sexual assault) was only grounds for removal due to retroactive legislation by Congress. Although the Ex Post Facto Clause and Double Jeopardy Clause are inapplicable to "civil" deportation proceedings, they might arguably apply in this criminal proceeding, based on a deportation order. Cf. Seale v. INS, 323 F.3d 150, 159 (1st Cir. 2003) (explaining why the Ex Post Facto Clause and Double Jeopardy Clause do not apply to routine deportation proceedings).

In order to prevail in a removal hearing, the government has the burden of proving by "clear and convincing evidence" that a non-citizen merits removal. Conteh v. Gonzales, 461 F.3d 45, 52 (1st Cir. 2006). In the "civil" immigration context of deportation, such a standard of proof may be unremarkable. Padilla v. Kentucky, 130 S. Ct. 1473, 1481 (2011) ("[D]eportation is . . . not, in a strict sense, a criminal sanction."). But see Peter L. Markovitz, Deportation is Different, 13 U. Pa. J. Const. L. 1299 (2011) (arguing that Padilla signifies a growing realization that deportation is neither truly civil nor criminal). In a criminal trial, no person is guilty until each fact alleged against them by the government is proven beyond a reasonable doubt.[6]

This Court ought review the removal order based "only on the administrative record on which the order of removal is based." See 8 U.S.C. § 1252(b)(4)(A). The record includes testimony,

---

[6] As the Supreme Court observed in In re Winship:

> The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law."

397 U.S. 358, 363 (1970) (quoting Coffin v. United States, 156 U.S. 432, 453 (1895)).

11

exhibits, and all other papers filed in the proceedings. 8 C.F.R. § 1240.9.

B. **Adequacy of Administrative Findings**

It is settled law in the First Circuit that courts "must judge the action of an administrative agency based only on the reasoning provided by the agency, not based on substitute grounds [the courts] construct [them]selves to salvage the agency's action." Ymeri v. Ashcroft, 387 F.3d 12, 17 (1st Cir. 2004) (citing El Moraghy v. Ashcroft, 331 F.3d 195, 203 (1st Cir. 2003); Albathani v. INS, 318 F.3d 365, 378 (1st Cir. 2003)). Although this Court defers where appropriate, "[t]he INS is not entitled to extreme deference." Albathani, 318 F.3d at 372 (citing Gailius v. INS, 147 F.3d 34, 44 (1st Cir. 1998)).

In Gailius, the First Circuit remanded a denial of an asylum claim because the administrative decision and subsequent affirmance by the Board of Immigration Appeals failed to address the asylum seeker's evidence and "failed to offer legally sufficient reasons for its decision." 147 F.3d at 47. The court ruled that under the normal principles of administrative law, which apply to immigration proceedings, "a reviewing court . . . must judge the propriety of [administrative] action solely by the grounds invoked by the agency," and "that basis must be set forth with such clarity as to be understandable." Id. at 44 (quoting SEC v. Chenery Corp., 332 U.S. 194, 196 (1974)) (omissions in original). "The agency's decision cannot be supported on

12

reasoning that the agency has not yet adopted." Id. (quoting Puerto Rico Sun Oil Co. v. EPA, 8 F.3d 73, 79 (1st Cir. 1993) (citing Chenery, 332 U.S. at 196)).

"If the [Bureau of Immigration Appeals] or the [immigration officer] has not ruled on an issue, either explicitly or implicitly, the respondent cannot ask us to uphold a decision on those grounds." El Moraghy, 331 F.3d at 205 (citing Gailius, 147 F.3d at 44); accord Un v. Gonzales, 415 F.3d 205, 209 (1st Cir. 2005) ("As we have made clear, we expect an agency to make findings, implicitly if not explicitly, on all grounds necessary for decision."); see also Diab v. Ashcroft, 397 F.3d 35, 42 n.7 (1st Cir. 2005) (urging that immigration officers be more comprehensive in discussing the analysis of potentially relevant documentary evidence so that reviewing courts can evaluate whether evidence was properly considered).

Although the cases in which the First Circuit has required clear findings in immigration decisions are largely asylum cases, the reasoning behind the rule applies with equal force to the present case. Additionally, the intersection here of immigration law and criminal law confirms that removal orders used as conclusive evidence in criminal convictions must be carefully and

adequately supported by the administrative agency.[7]

As the Board of Immigration Appeals noted, the immigration officer in this case initially "did not prepare a separate oral or written decision setting out the reasons for the decision." Admin. R. 40. Although the immigration officer several times stated generally that Miszczuk was removable for criminal convictions, he did not explain why. The most extensive explanation of the removal order was as follows:

> Q: Okay. Sir, now based on your answers to my questions and my review of these records of conviction I am making a finding of clear, convincing and unequivocal evidence that you are subject to removal from the United States because of these crimes of which you've been convicted.

Id. at 95-96; see also id. at 97 ("I'm ordering your removal from this country to the country of Poland because [of] your criminal record and the crimes you committed here in the United States . . . ."). At no point in the hearing did the officer make findings about the specific charges of removability against Miszczuk, nor did the officer even mention the charges of aggravated felonies or domestic violence.

Consequently, the Bureau of Immigration Appeals returned the

---

[7] The criminal sanctions at stake in this case are serious matters that require full constitutional protection. In contrast, the "various protections that apply in the context of a criminal trial do not apply in a deportation hearing." INS v. Lopez-Mendoza, 468 U.S. 1032, 1038 (1984). More recently, however, the Supreme Court has described deportation as "not, in a strict sense, a criminal sanction," but a "particularly severe 'penalty'" that is "nevertheless intimately related to the criminal process." Padilla, 130 S.Ct. at 1481.

14

decision to the hearing officer, citing case law that specified when an immigration officer may make summary decision removal proceedings. Id. at 40. The immigration officer then dictated a two-page oral decision that "[b]ased upon [Miszczuk's] admissions as well as a review of all of the records of the state court proceedings, . . . the Court finds by clear, convincing and unequivocal evidence [that Miszczuk] is subject to removal from the United States." Id. at 19. The immigration officer also found that Miszczuk "appears to have no relief from removal available to him." Id. at 20. The oral decision again did not state any specific grounds for removal (i.e., because he was an aggravated felon), or findings, although it concluded that Miszczuk "admitted the allegations in the Notice to Appear." Id. at 19. A few months later, the Board of Immigration Appeals dismissed Miszczuk's appeal, characterizing the immigration officer's decision as finding that Miszczuk was "subject to removal as an aggravated felon." Id. at 6.

The absence of any findings of fact, or documented application of the facts to the law by the immigration officer in this case may be enough for this Court to find the removal order inadequate and to dismiss the criminal case. See Gailius, 147 F.3d at 44 ("The agency's decision cannot be supported on reasoning that the agency has not yet adopted."). Morever, the need for findings was exacerbated by the multi-step legal analysis necessary to find Miszczuk removable.

15

Both of the crimes of which Miszczuk was convicted arguably could be categorized as aggravated felonies, but only after undergoing a rather specific legal analysis of the particular criminal statutes and facts underlying each conviction. The First Circuit uses the "modified categorical approach" for determining whether a specific statute is an aggravated felony. Conteh, 461 F.3d at 55. The government bears the burden of proving by clear and convincing evidence, solely from the record of prior proceedings, that an alien was convicted of a crime, and that the crime involved every element of an enumerated offense. Id. Where the statutory definition of a crime does not necessarily involve all elements of an enumerated aggravated felony, the conviction alone is not sufficient evidence of the removable offense. Id. at 56. At the same time, the Bureau of Immigration Appeals "may not adjudicate guilt or mete out criminal punishment, it must base removal orders on convictions, not on conduct alone." Id.

For example, the parties dispute whether Miszczuk's nolo contendere plea to domestic vandalism is an aggravated felony. Compare Opp'n Mot. Dismiss 14-16, with Def.'s Mem. 9-11. The Rhode Island domestic vandalism statute encompasses "maliciously or mischievously injur[ing] or destroy[ing] . . . the property of another." R.I. Gen. Laws 11-44-1. While this could satisfy the crime of violence definition under 18 U.S.C. § 16(a) as an "offense that has [as] an element the use, attempted use, or

threatened use of physical force against the person or property of another," the statute also encompasses crimes not involving physical force. See R.I. Gen. Laws 11-44-1 (emphasis added). For example, a person could be convicted under the Rhode Island statute for "writ[ing] upon, paint[ing], . . . or obstruct[ing] the property of another." Id. Therefore, under Conteh, 461 F.3d at 59, the government must have additional evidence beyond the bare conviction to prove that the domestic vandalism conviction is an aggravated felony, and the immigration authorities must analyze the crime and facts from the record of conviction before finding Miszczuk deportable, see Un, 415 F.3d at 209.

The immigration officer's oral decision leaves too many questions for this Court to find that the officer, explicitly or implicitly, made the findings necessary to show that Miszczuk is currently subject to a valid order of removal. See Gailius, 147 F.3d at 47 (requiring legally sufficient reasoning by immigration officer in order to uphold an immigration decision). The immigration officer entrusted with evaluating the facts did not explicitly find facts that would merit deportation, and to assume based on this record that he did so implicitly would require the Court to guess or imagine what steps of analysis he took. See Ymeri, 387 F.3d at 17. Absent a basis that is "set forth with such clarity as to be understandable," this Court cannot support the immigration officer's decision. Gailius, 147 F.3d at 44. Advancing this criminal case to trial on mere conclusory grounds

17

without specific findings or explanation by the administrative agency would be improper and potentially unconstitutional.

### C. First Amendment Claim

In accordance with the policy of avoiding constitutional decisions where possible, this Court does not reach the question of whether forcing Miszczuk to fill out a Polish passport application violated his First Amendment rights. See Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 346-48 (1936) (Brandeis, J., concurring) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case." (quoting Burton v. United States, 196 U.S. 283, 295 (1905))).

## III. CONCLUSION

The federal statute providing criminal penalties for willful failure to apply for travel documents requires the Court to decide the validity of the removal order <u>before trial</u>. 8 U.S.C. § 1253(a)(1). Thus, a jury here only would be permitted to decide whether the defendant refused to apply for travel documents, and the Court must bear the burden of deciding whether a final order of removal is valid - beyond a reasonable doubt. See id. Under the current administrative record, this Court cannot uphold the removal order.

The authorizing statute for this crime requires courts to dismiss the indictment when the predicate removal order is invalid. 8 U.S.C. § 1252(b)(7)(C). The Court must dismiss this

indictment for an insufficient record that fails to set forth legally sufficient findings. See Gailius, 147 F.3d at 47.

Absent clear findings of removability, this Court cannot invent reasons by which the defendant might be lawfully convicted. Even if the bare bones order of deportation presented here is sufficient for deporting a heretofore legal permanent resident, it is not enough where the government seeks to use the removal order as grounds to convict a non-citizen of a federal crime. The motion to dismiss the indictment is ALLOWED.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE